we have uh Mr is this I might mispronounce this one let's see it's correct actually it's correct your honor good afternoon may it please the court yeah please proceed and if you want to make rebuttal argument please try to stop for your full 15 minutes uh each I would like to reserve two minutes and I will try to watch the clock and stop it okay great thanks I'll try to remind you if you miss it yeah sure uh good afternoon again members of the court uh my client's appeal raises four issues unless the court has a different preference I wanted to talk about the jury instruction issue the materiality jury instruction um we believe this instruction misstates the materiality standard by making it broader than the decisions of the supreme court in this court case this court's decisions allow uh the standard that is approved for materiality is that the decision the statement has to be capable of influencing uh the decision-making body to which the decision is submitted the instruction that was given over our objection was that uh the statement had to be capable of influencing the agency's decisions or activities and it's the latter part of this the ability to influence the agency's activities they have a specific problem with because I believe that makes it a lot from the decision-making process virtually anything you submit to the decision maker has some tendency to impact their activities you know you submit a you know you make a statement you know they have to consider they have to listen to you right they have to look at whatever information you provided uh so that gets the trial of fact away from looking at whether it's material uh to the decision the ultimate decision the decision-making process and what about the issue of a wild goose chase because if you send an investigation on a wild goose chase they're going to figure out after you know they waste a lot of time that it didn't go anywhere so it won't affect the decision but it certainly wastes a lot of time and would seem to be material in a common sense way and it seemed that the district court sort of was focusing on that kind of a difference between what you were proposing and a simpler language right well I think it first of all I think it would be ultimately a question for the jury and removing that language from the instruction sort of takes that away it basically erases any distinction between whether it was something that truly uh sent the agency and the wild goose chase that on an issue that impacts the outcome or whether it's just something well they had to spend some resources but really didn't affect what they were doing in terms of the decision and specifically for example I'm using this just for illustrative purposes in this case you know the plane's altitude is a highly technical issue and the testimony from the NTSB here was that if the GPS data is available on the plane they'll pull it down routinely I mean they look at it anyway so a birth state in a multitude or actually in this case an estimate by a pilot that isn't necessarily accomplished for the purpose of this case isn't accompanied by any kind of technical data any kind of reliance and any kind of a machine proof or physical evidence so at least the jury could certainly find that it has no capability of impacting the decision-making process you know if we're talking now not about the instruction but about the evidence there was a family of evidence that he was flying low we have witnesses who the registration that he was flying about and about a thousand feet below what he testified to it may not be a perfect altimeter that is to say the the more reliable altimeter lost its data as soon as the power was disconnected but there's a lot of evidence that shows that he was flying about a thousand feet below what he testified to when he when he when you spoke to the agency well you know I agree with you that if that this is not a sufficiency of the evidence challenge it's an instructional challenge and I agree that there was evidence from which the jury could have found one where the other materiality I'm just saying that by making the instruction the way it was it prevented them from making an opposite finding because it that that's my argument I'm sorry if I wasn't clear about that again I think and again this on the one hand this was exactly the government's case they were basically saying look it was material because they had you know the NTSB had to check GPS to find out what altitude he was on even you know I know there was a result for testimony that they do that anyway but the theory that would push through the government by the government in this case was that it that it's material so long as it impacts the way in which investigation was conducted in a broad sense and I think that steps away from the requirement that it has to impact the ultimate decision and again I'm not saying that the jury couldn't have found the other way materiality that's why I'm not arguing sufficient evidence I'm saying that they could have found or there could have been a lack of unanimous finding of materiality there was enough evidence for that was instruction prevented that from happening that is my argument I don't know if I'm answering your question or not oh you are can you still hear me yes thank you oh okay I'm sorry so that was basically my argument in on materiality and I think it made sort of switching over to the prejudice prong of the analysis yes the burden is on the government if the court were to agree with me on the error the burden would be on the government to show there's harmless beyond reasonable doubt it's a missing element and so long as there was enough evidence for a properly jury to find or to decline to find materiality unanimously you know I think reversal for a new trial would be required both counts and in this case again the error here a goes to I think the government theory of the case be it undercut one of the lines of the defense that was presented because we did argue as this one of the defenses that you know whether or not my client was accurately estimating the altitude of his plane it was ultimately not material and three I I guess I I guess I'm gonna repeat myself I think there was enough for a jury it was properly instructed to find that the materiality hasn't been proven again higher technical issue one which really would be governed by GPS evidence that it's something that the NTSB would look at routinely when they look at the plane you know if it's available that will review it anyway and you a defense lack of reliance is not a defense but the actions of the agency are also some evidence of on the materiality issue I know it's kind of a fine line between whether it's lack of reliance or materiality but I think it's an example of the agency demonstrating what it would normally do in these circumstances you know they've perceived this plane crash to be a pilot error from the especially if you look at count one nothing that my client said about altitude altered was there certain evidence and nothing that he said altered the course of that investigation because they still deemed it to be pilot error the only reason it escalated to a more intense investigation where the statements about the propeller and about the downdraft the ones on which the jury declined to make a guilty finding because it was special verdict or a bunch of statements that were listed as possibly the basis for the verdict and the only one that they found him guilty on were about the altitude and there's not necessarily on the second count not only was did the jury find as to altitude but the jury also found that there was a substantial and rapid loss of altitude and that might well be caused by the propeller defect actually I would disagree with that I think the rapid loss of altitude they found that that statement is incorrect but I think they declined to make declining finding about the propeller I think it would be speculative to say that even though they've declined to make that finding that they're somehow related anyway so I to be honest with you the way I read the special verdict here is that they were strictly related to statements about altitude I in fact I'm not even sure that anybody's ever argued them in tandem I guess mr. course you can correct me if it's in the record shows otherwise but well but he testified as to the propeller that the propeller sheared off in flight right I mean he made that testimony but he wasn't convicted on the basis that I understand that but in terms of what he might have said that might have misled if he's if he said he said we had a rapid fall in altitude well what's gonna cause a rapid fall in altitude well I think that's how high he was but the question is what caused it and if you're looking around to figure out what caused the rapid fall in altitude one of the things you're gonna start looking for is where whether that plane is under any power and whether the propellers working right you are my understanding of the dispute about the propeller was whether it came off in flight or on the impact when the plane left that's correct and again I would say that I'm not aware of anybody's arguing that there was that kind of relationship I hear what the court is saying but that was for it was not the way I read the verdict or the record I I guess ultimately the court decides but that that was my reading of the record this issue so my point was that if the correct instruction had been given they might have found might have reasonably found that materiality has not been proven you know they also could have gone the other way I don't disagree with that and for that reason I think the court should reverse both counts and remand for a new trial now I say I have about three minutes left I'd be happy to answer the court's questions if there are any otherwise I'd like to reserve the rest of my time for rebuttal. I have no questions. Judge Fletcher, Judge Conso, your time is reserved. Thank you. We'll now hear from Mr. Corso with the government's position. Thank you, Your Honor. May it please the court, Counsel Stephen Corso of the United States. This afternoon we we asked the court to affirm Mr. Kerr's convictions in both counts 1 and 2 for obstructing the NTSB investigation as well as the appeal proceedings that stemmed from the August 24th 2014 crash of his plane up in the Brooks Range in Alaska. The district court accurately instructed the jury on materiality. The debate there really began during the charge conference when the government was concerned that the standard law which is that the statement has to impact the decision maker or the decision of the decision-making body didn't include the investigative phase of the NTSB proceedings and therefore the government requested that the instruction be modified slightly to include investigation and asked the court directly to use the language investigation in the charge. The court was reluctant to and instead settled on a bit of a middle ground and changed decision of the decision-making body to decision or activities of the agency. We felt this was this is appropriate and that the court did not abuse its discretion in doing so because by instructing the jury this way it clarified for the jury that it was to consider both the appellate phase of the proceeding before the NTSB as well as the investigative phase of the NTSB proceeding. Mr. Kirst concerned that this overly broadened the what the jury was looking at is really I think unfounded. The language that the defendant was charged with in both counts 1 and 2 these statements involving altitude, the propeller, whether it's front seat passenger fell into the controls were all very significant statements and they went right to the core of the case which is as the court has already identified if Kirst were at the proper altitude and he still crashed the mountain on a clear day crashed into the mountain on a clear day then something must have happened to intervene and otherwise if he's at a proper altitude then he's all right then he's not reckless and so forth so by making these statements they were specifically designed to impact the investigation cause the investigation to go a different route or even affect the outcome of it influence the investigators not to decide to recommend an enforcement action or influence the ALJ not to uphold the appeal of the revocation of his license and the instruction to further kind of hemmed in the jury it did allow the jury to consider the activities of the agency but the court specifically instructed that the activities and the decision of the agency in count one meant that they must be capable of influencing the NTSB investigation and in count two that those statements must be capable of influencing the NTSB appeal and in the that what the materiality element meant was that the defendant had to say something that would influence the NTSB in a material or important way and so Mr. Kirst concerns well perhaps the state the jury could have found that the statements impacted the jury in a non-material way something like turning on a computer or sharpening a pencil or using a calculator but it's just not the case the way the court worded the instruction the way the parties explained the instruction and the the total nature of the trial which was about these statements and how they were intended to affect the investigation to change the outcome it's very obvious that Mr. Kirst intended to shift blame off of himself and these statements were the way he tried to do it these statements suggest that he was at a proper altitude approaching the pass and that something out of his control occurred to force him down into the mountain and this was a cascading sequence of explanations including there was a downdraft that caused him to plummet originally a thousand feet above the mountaintops all the way down to around 4,000 feet into the mountain that the passenger slumped into his controls that the propeller came off in flight and so forth so these are all significant things and he was very dishonest and contradictory as he changed his explanation throughout so the concern that Kirst has that somehow the jury would have mistakenly convicted him on something that was not important to the or something trivial is unfounded and therefore we asked the court to conclude that the instruction was proper I mean if there was even if there was some error in how the court formulated the instruction but for all these same reasons Mr. Kirst was not prejudiced because the jury was focused on the right things and the instruction led them to the right things and parties both the defendant at trial and the prosecutor at trial also consistent with that pointed the parties to the most material things that would affect the NTSB investigators and ALJ in the most important relevant and immaterial ways Mr. Kirst or Mr. Voraybov did not address either the other two issues before the appeal so I'll move on and address those the first issue raised in in his brief was whether the NTSB investigation was a proceeding under 18 U.S.C. 1505 and we submit to the court that it most certainly was however as an initial matter we believe that Mr. Kirst weighed this issue by not properly raising it in a 12b3 motion prior to trial the basis for making that motion we could still review it for plain error we respectfully disagree judge we recommend or we believe that the court should not review it for plain error the the basis for the motion was reasonably available to Mr. Kirst before trial and the motion could be determined without a trial on the merits and it's really it's a question of law of course and questions of law versus questions of fact or lend themselves to rule 12b3 motions and rulings before trial and the question that presented was whether there was a defect in count one whether the NTSB investigation was a proceeding before under 1505 and there was no good cause for informed him that the NTSB investigates accidents for probable cause to make safety recommendations but also acts as a court of appeals for pilots when the FAA revokes their licenses and also stated that in fact in this case the NTSB ALJ upheld the appeal of the FAA's revocation of indictment was defective did not need to go to a jury there was no issue that the jury needed to resolve in order to assist the court with making that determination the NTSB's authority to investigate to hold adjudicatory hearings on the appellate side to issue subpoenas to witnesses and for evidence to conduct hearings to administer oaths all these things are spelled out in the enabling statutes that led to the formation of the NTSB to begin with and they can be found at 49 USC 1113 49 USC 1132 49 USC 1133 and I could keep going the point is can I interrupt this is this is not strictly relevant given the nature of the jury's verdict because the jury checks off only as to count one the mistaken statement about the altitude and as to number two about the altitude and about the rapid descent of about a 1500 feet but nonetheless I'm curious there were two passengers in the back seat who I think could have testified whether it was true that Spencer had slumped against the controls what was the why don't we get testimony to that effect judge I don't know the answer that I was not the trial attorney in the case I would just suggest that the prosecutors did not feel that they needed the testimony of the two backseat passengers or perhaps the two backseat passengers were not available or interested in to see the top of the mountains so one of them was available for at least one purpose that's my confusion one of them was available and I'm sorry the front seat passenger did not testify so I'm sorry for that confusion well the front seat passenger was Spencer correct so Spencer died about one month after the I understand that and one of the backseat passengers did testify as to we had to look up to see the top of the mountains that's correct she also testified that the plane was flying quite level that there was no emergency on board that the conversation was normal that they and the as you said that they were about one-third of the way down from the top of the mountains which would have put them roughly around 4,000 feet which was too low to clear the pass which was around 4,400 feet but I guess you just don't know the answer to the question as to why we don't get testimony from either of the two backseat passengers as to whether or not Spencer slumped against the controls well I understand your question a bit better now the backseat passenger who did testify testified that she did not observe Spencer slumping into the controls and at the crash site Spencer was still harnessed into his seat quite securely which leads most everyone to believe that in fact he was not out of his harness he was never out of his harness and therefore never slumped into the controls and that's part of the problem that Kirst has here in this case is he lacks such credibility because of the changing explanations that he gave as well as the fact that so much of his statements so much of his testimony in this in these proceedings is inconsistent with a lot of the other evidence in the case both the GPS data testimony from the testimony from the eyewitnesses and also testimony from the different folks who dealt with the propeller issue in which the maintenance director for the plane the NTSB the FAA all concluded that the propeller did not separate while the plane was in flight and instead broke on impact when Kirst slammed the plane into the side of the mountain but none of these issues are relevant to whether the indictment was defective or not or whether the NTSB investigation is a proceeding under 1505 which is in our view a pure legal question and I've got another question that's not strictly relevant to the outcome of this case and you may not be in a position to answer it in which case of course just say you can't uh is it customary if you have a pilot who tells the tells a falsehood about what happened that there's criminal prosecution of the pilot it surprised me that actually there was criminal prosecution here instead of just a loss of license and all kinds of other things I think what's interesting judge in this case is that as I understand it if if Kirst had not lied at all the FAA would not have brought an enforcement action against him and it seems to me that if the FAA had not brought this enforcement action against him this case probably never would have gone criminal to begin with so that's the best answer to you I can provide to that question um so because these these facts did not need to be litigated before a jury and because of the the that the the issue is really more is a legal question more than anything we submit that um Mr. Kirst waived the argument that the indictment uh was defective nevertheless um in our brief we we make the argument that um the court was in fact correct or that the that the case law supports the the notion or that the that the investigation of the NTSB was a was a proceeding um and we run through these arguments citing the um U.S. versus Technic Services Incorporated U.S. versus VIXI which is this court's authority that uh and that if an agency has adjudicatory authority then a proceeding before the or investigation before that agency is um a proceeding before the uh is a proceeding under 1505. We also cited the Garvey case on the under the D.C. circuit that outlines the split enforcement regime between the FAA and NTSB and concludes that the NTSB does have adjudicatory authority and we can go on I'm running out of time but there was no error here um for the court to conclude that the NTSB investigation was a and there certainly was no plain error because there's no clear authority that the NTSB investigation was not a proceeding under 1505. Thank you very much. Thank you. Thank you Mr. Corso. Mr. Ferrovia, please make your rebuttal argument. Yes, Your Honor. Thank you. Uh first of all I have a couple of points to make on the jury instruction issue. I respectfully disagree with Mr. Corso about the standard to review. It's non-abusive discretion. Our problem with instruction is not a language difference. It's not how the district court formulated it. I think it's an actual legal error so for that the standard review used to know it's a legal question. Was there not the instruction accurately states the materiality standard? As far as was there argument of counsel here clarified the instruction? I think it did the opposite. As I said in my initial argument the way the government has explained this instruction standard includes the argument actually emphasized through the broad nature of what materiality was under this instruction. So I don't think it helped and I would direct the court to 12 AR 2193 or 12 AR 2147 as examples of how the government argued the case. So I think if anything the prosecutor's explanation exacerbated the problem with the instruction. I also wanted to briefly jump to the issue whether or not there was a pending proceeding regarding count one and specifically to the waiver argument. The reason I think Mr. Corso is mistaken on the waiver is because it matters very much in this case at what stage of the proceeding we are. You know because NTSB as he actually mentioned they're in a split regime. They're an accident investigator and they also have some adjudicatory responsibilities as an appeals board for an FAA enforcement action. So what the trial evidence done and you know my argument certainly heavily relies on this is it places the proper context for count one at what point of the proceeding did the interview take place in the submission of the 61 point form took place. It was at the time when the NTSB was still acting only as an accident investigator which where it has no enforcement authority, no regulatory authority, no um no sort of the type Mr. Corso mentioned. So that's the reason why there should not be a waiver. We addressed it in the briefing but I wanted to make our position clear on this. There was no waiver because there were facts specifically regarding the posture of the case which uh which made the sufficiency of the evidence argument important. Finally I guess I I read uh the back the back passenger's testimony about the altitude difference in Mr. Corso. I actually think it helps the argument that Mr. Kerr certainly didn't knowingly lie about the altitude because he was using her testimony as sort of a way to explain why he thought she wasn't at a particular altitude. You know she was she said that there were there were about two third up the mountain and he was kind of using that as not as the only measure of altitude but serve as a way to quickly orient. So you know I'll submit to the court's reading of the record but that's our our reading of it right now. Thank you counsel yes. I want to thank uh Mr. Vorobyov and Mr. Corso for their excellent arguments. This case will now be submitted and the panel will take a 10-minute recess. The uh advocates are again commended and you will hear from us in due course. Thank you.
judges: FLETCHER, GOULD, COLLINS